UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:12-cv-22745-SEITZ/SIMONTON

CHANEL, INC.,

       Plaintiff,

vs.

THE PARTNERSHIP OR
UNINCORPORATED ASSOCIATION
DOING BUSINESS AS PURSE VALLEY
*et al.*,

       Defendants.
_____/

## ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT AGAINST THE PURSE VALLEY DEFENDANT

THIS MATTER is before the Court upon Plaintiff's Fourth Motion for Entry of Final Default Judgment [DE 131]. Plaintiff, Chanel, Inc. ("Chanel" or "Plaintiff") moves for final default judgment against the Purse Valley Defendant, the Partnership Or Unincorporated Association doing business as Purse Valley ("Defendant") for alleged violations of the Lanham Act, codified at 15 U.S.C. §§ 1114, 1116, 1121, and 1125(a). As Defendant has failed to appear, plead or otherwise defend this action, and given the documentary evidence submitted in support of its motion, the Court shall grant Plaintiff's Motion for Final Default Judgment in part. Plaintiff seeks an award of $528,000,000.00 for Defendant's willful use of its marks. Though the Defendant's use was willful, an award is excess of half a billion dollars is unreasonable. For reasons set out below, the Court awards $4,752,000.00 in damages.

    I.     **FACTUAL AND PROCEDURAL BACKGROUND**

Chanel, Inc. ("Chanel") is a corporation duly organized under the laws of the State of New York with its principal place of business in the United States located at Nine West 57th

Street, New York, New York 10019. (Amended Complaint [DE 6 at ¶ 3].) Chanel is engaged in the promotion, distribution, and sale in United States interstate commerce of high quality goods under the Chanel Marks. (Declaration of Adrienne Hahn Sisbarro in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction[1] ("Hahn Decl.") ¶¶ 4, 5 [DE 8-9].) Chanel is, and at all times relevant hereto has been, the owner of all rights in and to the following Federally registered trademarks:

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| CHANEL | 0,612,169 | September 13, 1955 | IC 014 - Necklaces |
| CHANEL | 0,626,035 | May 1, 1956 | IC 018 – Women's Handbags |
| CHANEL | 0,902,190 | November 10, 1970 | IC 014 – Bracelets, Pins, and Earrings |
| CHANEL | 0,915,139 | June 15, 1971 | IC 025 – Women's Shoes |
| CHANEL | 0,955,074 | March 13, 1973 | IC 014 – Watches |
| (CC logo) | 1,241,264 | June 7, 1983 | IC 025 – Suits, Jackets, Skirts, Dresses, Pants, Blouses, Tunics, Sweaters, Cardigans, Tee-Shirts, Capes, Coats, Rain-Coats, Jackets Made of Feathers, Shawls, Scarves, Shoes, and Boots |

---

[1] Plaintiff's *Ex Parte* Application for Temporary Restraining Order and Preliminary Injunction, together with supporting exhibits and declarations are incorporated herein by reference (the "Application for Temporary Restraining Order"). [DE 8.]

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| CHANEL | 1,241,265 | June 7, 1983 | IC 025 – Suits, Jackets, Skirts, Dresses, Pants, Blouses, Tunics, Sweaters, Cardigans, Tee-Shirts, Capes, Coats, Rain-Coats, Jackets Made of Feathers, Shawls, Scarves, Shoes, and Boots |
| (CC logo in circle) | 1,271,876 | March 27, 1984 | IC 025 – Clothing - Namely, Coats, Dresses, Blouses, Raincoats, Suits, Skirts, Cardigans, Sweaters, Pants, Jackets, Blazers, Shawls, Hats, and Shoes |
| (CC logo) | 1,314,511 | January 15, 1985 | IC 018 - Leather Goods-Namely, Handbags |
| CHANEL | 1,347,677 | July 9, 1985 | IC 018 - Leather Goods-namely, Handbags |
| (CC logo) | 1,501,898 | August 30, 1988 | IC 014 – Costume Jewelry<br>IC 025 – Belts |
| CHANEL | 1,510,757 | November 1, 1988 | IC 009 – Sunglasses |
| CHANEL | 1,571,787 | December 19, 1989 | IC 014 – Watches and Clocks |
| (CC logo) | 1,654,252 | August 20, 1991 | IC 009 – Sunglasses |
| CHANEL | 1,733,051 | November 17, 1992 | IC 018 - Leather Goods; namely, Handbags, Wallets, Travel Bags, Luggage, Business and Credit Card Cases, Change Purses, Tote Bags, Cosmetic Bags Sold Empty, and Garment Bags for Travel |

3

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| CC (logo) | 1,734,822 | November 24, 1992 | IC 018 - Leather Goods; namely, Handbags, Wallets, Travel Bags, Luggage, Business Card Cases, Change Purses, Tote Bags, and Cosmetic Bags Sold Empty |
| J12 | 2,559,772 | April 9, 2002 | IC 014 -Timepieces; namely, Watches, and Parts Thereof |
| CC (logo) | 3,025,934 | December 13, 2005 | IC 018 – Handbags |
| CC (logo) | 3,025,936 | December 13, 2005 | IC 009 – Sunglasses |
| CHANEL | 3,133,139 | August 22, 2006 | IC 014 - Jewelry and Watches |
| CHANEL | 3,134,695 | August 29, 2006 | IC 009 – Sunglasses |
| CC (logo) | 4,074,269 | December 20, 2011 | IC 009 - Protective Covers for Portable Electronic Devices, Handheld Digital Devices, Personal Computers, and Cell Phones. |

(the "Chanel Marks") which are registered on the Principal Register of the United States Patent and Trademark Office and are used in connection with the manufacture and distribution of high quality goods in the categories identified above. (Hahn Decl. ¶ 4 [DE 8-9]; *see also* United States Trademark Registrations of the Chanel Marks at issue ("Chanel Trademark Registrations") attached as Composite Exhibit A to the Hahn Decl. [DE 8-10])

As set forth more fully in Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction [DE 8] and Plaintiff's *Ex Parte* Application for

4

Order Restraining the Transfer of Assets Tied to the Counterfeiting Operation [DE 41][2], and the Declaration of Chanel's representative Adrienne Hahn Sisbarro filed in support of Plaintiff's Application for Temporary Restraining Order [DE 8-9], Defendant is promoting, selling, offering for sale and distributing goods bearing counterfeits of Plaintiff's trademarks within this Judicial District through various fully interactive commercial Internet websites identified on Schedule "A" hereto (the "Subject Domain Names") in direct contravention of Chanel's rights.[3] (*See* web page printouts from each of the Defendant's websites showing Defendant's advertisements and offers to sell counterfeit Chanel branded products attached as Composite Exhibit A to the Application for Temporary Restraining Order [DE 8-1] (hereafter, "Defendant's Websites").) As such, Defendant is the active, conscious, and dominant force behind the promotion, advertisement, distribution, sale, and offering for sale of handbags, wallets, shoes, boots, belts, sunglasses, watches, costume jewelry, including necklaces, bracelets, earrings and rings, and protective covers for portable electronic devices that bear counterfeit and confusingly similar imitations of the Chanel Marks (the "Counterfeit Goods") through the fully interactive commercial websites operating under Subject Domain Names. (Amended Complaint ¶¶ 6-17, 27-44, 49-51, 56-59; *see also* Hahn Decl. ¶¶ 9-15; Declaration of Eric Rosaler in Support of Plaintiff's Application for Temporary Restraining Order (hereafter, "Rosaler Decl.") [DE 8-13]; Declaration of Stephen M. Gaffigan in Support of Plaintiff's Application for Temporary Restraining Order (hereafter, "Gaffigan Decl.") ¶¶ 2, 3 [DE 8-12]; *see also* a chart outlining the Registrant and Administrative and Contact information identified on the WHOIS domain

---

[2] Plaintiff's *Ex Parte* Application for Order Restraining the Transfer of Assets Tied to the Counterfeiting Operation, together with supporting exhibits and declarations are incorporated herein by reference (the "Eighth Application for Asset Restraint"). [DE 41.]

[3] Plaintiff's Statements of Facts regarding its rights and Defendant's infringing activities are outlined in the Amended Complaint in Paragraphs 27-44 [DE 6] and in Plaintiff's Application for Temporary Restraining Order [DE 8] and are incorporated herein by reference.

registration records for the Subject Domain Names attached as Composite Exhibit A to Plaintiff's Application for Temporary Restraining Order [DE 8-4].)

Plaintiff retained Eric Rosaler ("Rosaler"), an officer of AED Investigations, Inc., a licensed private investigative firm, to investigate the suspected sales of counterfeit Chanel branded products by the Defendant. (*See* Hahn Decl. ¶ 10; Rosaler Decl. ¶ 3.) Rosaler accessed three (3) of the Internet websites owned and operated by Defendant existing under the Subject Domain Names, ipursevalley.co, purse-valley.asia,[4] and basicreplicas.co and finalized the purchase of a pair of ballet slippers, a protective cover for a portable electronic device, and a wallet from each website respectively – each bearing counterfeits of at least one of the Chanel Marks at issue in this action. (*See* Rosaler Decl. ¶¶ 4-9 and Composite Exhibit B attached to Plaintiff's Application for Temporary Restraining Order [DE 82 through DE 8-3].)  Rosaler finalized payment for the Chanel branded goods he purchased by VISA card and was provided with the following payment processor data for the respective buys: ipursevalley.co – MARKETING INC or pro online parts ball ston spa Venturecards; purse-valley.asia - http://www.pfcshop.com; and basicreplicas.co – THAIEPAY - http://www.thaiepay.com. (See id.)

The detailed web page listings and images of the Chanel branded ballet slippers, protective cover for a portable electronic device, and wallet purchased by Rosaler via the Internet websites operating under the Subject Domain Names, ipursevalley.co, purse-valley.asia, and basicreplicas.co, were reviewed by Chanel's representative, Adrienne Hahn Sisbarro, who determined the products purchased to be non-genuine, unauthorized Chanel products. (Hahn Decl. ¶¶ 11-12, 15.)  Ms. Hahn Sisbarro also reviewed and visually inspected Defendant's

---

[4] The Internet website operating under the Subject Domain Name purse-valley.asia automatically redirects and forwards to the Internet website operating under the domain name pursevalleys.net. Rosaler's purchase was completed through the pursevalleys.net website. (See Rosaler Decl. ¶ 6.)

6

Websites, as well as pictures of items bearing the Chanel Marks offered for sale by Defendant via its Internet websites operating under the Subject Domain Names, and likewise determined the products were not genuine Chanel goods. (*See* Hahn Decl. ¶¶ 13-15 [DE 8-9].)

On November 1, 2012, Plaintiff filed its *Ex Parte* Application for Order Restraining the Transfer of Assets Tied to the Counterfeiting Operation. [DE 41.] On November 7, 2012, the Court entered an Order granting Plaintiff's Application for Asset Restraint (filed under seal), and referred Plaintiff's Application for Preliminary Injunction to the Honorable Magistrate Judge Andrea M. Simonton. Magistrate Simonton issued a Report and Recommendation on November 19, 2012, recommending that Plaintiff's Application for Preliminary Injunction should be granted [DE 60], and this Court ratified, affirmed, and adopted the same on November 21, 2012. [DE 63.]

The Order granting Plaintiff's Application for Asset Restraint and subsequent Preliminary Injunction enjoined, *inter alia*, Defendant and any and all financial institution(s) responsible for transferring funds into the same financial institutional account(s) as any of the identified bank accounts from transferring, disposing of, or secreting any money, stocks, bonds, real or personal property, or other assets of Defendant or otherwise paying or transferring any money, stocks, bonds, real or personal property, or other assets to Defendant, or into or out of any accounts associated with or utilized by any of the Defendant. The Order also required the financial institution(s) to provide Plaintiff's counsel a statement reflecting any accounts at the financial institution(s) subject to this Order and the dollar amount of any assets contained therein. Elavon, Inc. and First Data, payment processors for the Purse Valley Defendant, complied with the requirements of the Court's Orders, and restrained funds in the amount of $5,909.00 and $88,370.33, respectively. (*See* Declaration of Stephen M. Gaffigan in Support of

Plaintiff's Motion for Entry of Final Default Judgment Against Defendant ["Gaffigan Decl. in Support of FDJ"] ¶ 2, filed herewith.)

On November 1, 2012, Plaintiff filed its Motion for Order Authorizing Alternate Service of Process [DE 43], which the Court granted on November 7, 2012. [DE 44.] Pursuant to the Court's Order, Plaintiff served Defendant with its Summons and a copy of the Complaint and Amended Complaint via electronic mail ("e-mail") service on November 12, 2012. (*See* Gaffigan Decl. in Support of FDJ ¶ 3.) Plaintiff filed the Proof of Service as to Defendant on November 13, 2013. [DE 51.]

Plaintiff filed its Request for Clerk's Entry of Default on March 11, 2013. [DE 85]. On March 12, 2013, the Clerk of Court, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, entered default against Defendant for failure to appear, plead, or otherwise defend this action. [DE 86.] To date, Defendant has not sought to vacate the default or otherwise appear and defend this action. Plaintiff now moves the Court to grant Default Final Judgment against Defendant.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter a default judgment against a properly served defendant, who, like Defendants here, failed to file a timely responsive pleading. By such a default, all of Plaintiff's well-pled allegations in the Complaint are deemed admitted. *See Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987); *Petmed Express, Inc. v. Medpots.com*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004). If the admitted facts in the Complaint establish liability, then the Court must determine appropriate damages. Where all the essential evidence is on record, an evidentiary hearing on damages is not required. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n. 13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary

hearings in a permissive tone . . . We have held that no such hearing is required where all essential evidence is already of record.") (citations omitted); *see also Petmed Express*, 336 F. Supp. 2d at 1223 (entering default judgment, permanent injunction and statutory damages in a Lanham Act case without a hearing). In this case, a hearing on damages is unnecessary as Plaintiff seeks statutory damages and has submitted detailed declarations with accompanying documentary evidence in support of its damages request.

### III.   LIABILITY

#### A.   Trademark Infringement

The allegations in Plaintiff's Amended Complaint, in conjunction with record evidence, support a finding of liability against Defendant for trademark infringement. "[T]o prevail on a trademark infringement claim a plaintiff must demonstrate that (1) its mark has priority; (2) defendant used its mark in commerce [without consent]; and (3) defendant's mark is likely to cause consumer confusion." *Petmed Express*, 336 F. Supp. 2d at 1217-18 (citing *Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1243 (11th Cir. 2002) and *Frehling Enter., Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330 (11th Cir. 1999)). Plaintiff has established each of these elements because: (1) Plaintiff's ownership and registration of the trademarks at issue precede Defendant's infringing conduct (Amended Complaint ¶ 37; Hahn Decl. ¶ 4); (2) Defendant advertised, offered for sale and/or sold goods bearing Plaintiff's marks in interstate commerce without Plaintiff's consent (Amended Complaint ¶ 49; *see also* Hahn Decl. ¶¶ 9-15 and Composite Exhibit B attached thereto [DE 8-11]; Rosaler Decl. ¶¶ 4-9 and Composite Exhibit B to Plaintiff's Application for Temporary Restraining Order [DE 8-2 through DE 8-3]; *see generally* Defendant's Websites attached as Composite Exhibit A to Plaintiff's Application for Temporary Restraining Order [DE 8-1]); and (3) the marks used on the goods Defendant

advertised, offered for sale and/or sold are so similar to Plaintiff's marks that consumer confusion is likely. (Amended Complaint ¶¶ 37, 50); *see also* Hahn Decl. ¶¶ 9-15 and Composite Exhibit B attached to the Hahn Decl.; Rosaler Decl. ¶¶ 4-9 and Composite Exhibit B to Plaintiff's Application for Temporary Restraining Order; *see generally* Defendant's Websites attached as Composite Exhibit A to Plaintiff's Application for Temporary Restraining Order.)

### B. False Designation of Origin

Plaintiff alleges false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). That section provides as follows:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

The same set of facts allowing Plaintiff to prevail under § 1114(1)(a) will result in recovery under § 1125. *See Babbit Elecs.*, 38 F.3d at 1181 (11th Cir. 1994) (citing *Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 217 (5th Cir. 1985)); *see also Clairol Inc. v. Save-Way Indus., Inc.*, 210 U.S.P.Q. 459, 469-70 (S.D. Fla. 1980). "This is because Section 1125(a) is broader than Section 1114 in that it covers false advertising or description whether or not it involves trademark infringement." *Babbit Elecs.*, 38 F.3d at 1181 (citing *Silverstar Enters.,*

*Inc. v. Aday*, 537 F. Supp. 236 (S.D.N.Y. 1982)). As with trademark infringement claims, the test for liability for false designation of origin under § 43(a) is also "whether the public is likely to be deceived or confused by the similarity of the marks at issue." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S. Ct. 2753, 763 (1992). As discussed above, Plaintiff has sufficiently shown there is a strong likelihood of confusion that arises because of the use by Defendant of the Chanel Marks. Thus, Plaintiff is entitled to default judgment on its false designation of origin claim.

## IV.   **INJUNCTIVE RELIEF**

Plaintiff is entitled to the requested injunctive relief pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502, and 28 U.S.C §1651(a). A plaintiff seeking a permanent injunction must demonstrate that (1) it has suffered an irreparable injury; (2) remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardship between plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

Here, the well-pled allegations and record evidence demonstrate that Plaintiff has developed goodwill among the consuming public which would be undermined if Defendant is not prohibited from further infringement. Defendant's counterfeit products will create irreparable harm and confusion, particularly because the counterfeit products bear identical markings as Plaintiff's genuine merchandise, and are not manufactured to Chanel's quality standards. Furthermore, Defendant willfully infringed the Chanel Marks and continued to do so even after service of the Amended Complaint in this matter upon it. Such willful conduct demonstrates a likelihood that Defendant would continue to harm Plaintiff's trademarks if the Court declined to

issue an injunction. *Petmed Express*, 336 F. Supp. 2d 1222-23 (entering permanent injunction under 15 U.S.C. § 1116 to prevent further infringement of federally-protected trademarks).

### V.   DAMAGES

#### A.   Statutory Damages for the Use of Counterfeit Marks

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 and not more than $200,000.00 per counterfeit mark per type of good.  In addition, if the Court finds that Defendant's counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good. 15 U.S.C. § 1117(c)(2). A statutory damage award is appropriate in a case where the defendant has defaulted. *See Petmed Express*, 336 F. Supp 2d at 1219-22.  Pursuant to 15 U.S.C. § 1117(c), Plaintiff elects to recover an award of statutory damages as to Count I of the Amended Complaint.

The Court has wide discretion to set an amount of statutory damages. *Id.* at 1219 (citing *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990) (concluding that the court's discretion in setting the amount of copyright damages is "wide, constrained only by the specified maxima and minima")). Congress enacted a statutory damages remedy in trademark counterfeiting cases, because evidence of a defendant's profits in such cases is almost impossible to ascertain. *See e.g.,* S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages.).  This case is no exception.  Since Defendant has refused to participate in this litigation, Plaintiff has been deprived of the ability to obtain discovery from it.

12

"A finding of willful infringement-violative conduct that the defendant knew to be improper and done in bad faith-justifies an award of heightened damages . . . ." *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1476 (11th Cir .1991). Maximum statutory damages award are particularly appropriate for trademark infringement that is markedly egregious or is otherwise exceptional. *See, e.g.*, *Microsoft Corp. v. Gordon*, No. 1:06–CV–2934–WSD, 2007 WL 1545216 (N.D. Ga. May 24, 2007) ("The Court believes that statutory damage maximums should be reserved for cases of notable scope or particularly egregious conduct.")

Plaintiff seeks the maximum statutory damages for willful conduct, $2,000,000.00 per mark counterfeited. The Court, in exercise of its statutory discretion, declines to award the amount Chanel seeks. Chanel has provided strong, undisputed evidence that Defendant has engaged in willful conduct. Defendant knew it was willfully infringing the Chanel Marks, and it engaged in computer fraud by hacking into legitimate websites for the purpose of redirecting consumers to websites selling goods bearing the Chanel Marks. However, the facts as alleged do not justify imposing the statutory maximum. The extent and duration of Defendant's website hacking is unknown and it is unclear, based on the record evidence, how the hacking affected the third-party website owners.[5] Though the lack of evidence as to extent and duration is attributable to Defendant's non-participation in discovery, Plaintiff has not provided any victim-impact evidence from those victims of whom Plaintiff was aware, such as the Southern District of New York Court Interpreters Office and MARC, Inc. As such, the record does not support that Defendant's conduct warrants the statutory maximum.

However, Defendant's use of third-party websites is aggravating. Chanel has suggested elsewhere, and the Court has agreed, that the appropriate statutory award in the normal case is

---

[5] Plaintiff has alleged that when third-parties are notified they sometimes take corrective action, but other times they do nothing.

13

$6,000.00 per mark counterfeited. *Chanel Inc. v.7perfecthandbags.com,* No. 1:12-cv22057-PAS, DE 207, p.14. ("Chanel respectfully suggests the Court could start with a baseline of the statutory award of $1,000.00, treble it to reflect Defendants' willfulness, and then double the product for the purpose of deterrence.") Defendant's use of third-party websites warrants treble damages over the normal case. The result would be $18,000.00 per Chanel Mark counterfeited (22) per type of goods sold (12 - handbags, wallets, shoes, boots, belts, sunglasses, watches, necklaces, bracelets, earrings, rings, and protective covers for portable electronic devices), for a total award amount of **$4,752,000.00**.

## VI.   CONCLUSION

For the reasons stated above, it is hereby

ORDERED THAT

Plaintiff's Motion for Entry of Final Default Judgment [DE 131] is GRANTED. The Court shall concurrently enter Final Default Judgment against Defendant.

DONE AND ORDERED in Miami, Florida, this 31st day of January, 2014.

*/s/ Patricia A. Seitz*
PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:   All Counsel of Record

14

## SCHEDULE "A"
## SUBJECT DOMAIN NAMES

1. 1854stock.com
2. bagaholicsonline.com
3. bagsfactory.co
4. bagslucci.com
5. bagsoho.com
6. bagsreplica.co
7. basic-replica.net
8. basicreplicabags.co
9. basicreplicas.co
10. besthandybag.com
11. cityjewels.biz
12. earpho.com
13. epursevalley.co
14. epursevalley.co.uk
15. epursevalley.com
16. eshopvi.com
17. espotbags.co
18. fashionpicks.co
19. fashionreplicabags.asia
20. geekpursez.co
21. handbagsmama.info
22. highreplica.cc
23. hiohi.com
24. ifashionpicks.co
25. igeekpurses.co
26. ipursevalley.co
27. ipursevalley.com
28. ireplicahandbags.co
29. istarshandbags.co
30. jessicabags.me
31. jewelrysig.com
32. kuoutlet.com
33. poshmoda.com.co
34. profitcome.net
35. pursevalley.asia
36. purse-valley.asia
37. purse-valley.com
38. pursevalley.com.co
39. pursevalley.hk
40. pursevalley.org
41. purse-valley.org
42. pursevalleyhk.com
43. pursevalleys.net

44. redirect1.co
45. redirx.co
46. redrw.co
47. replicaguide.co
48. replicapot.net
49. replicatouch.org
50. replicavalley.net
51. sotup.com
52. spotbags.asia
53. spotbags.co
54. spotbags.hk
55. spotbags.org
56. spotbagz.co
57. starhandbags.so
58. starshandbags.co
59. superstarhandbags.co
60. taladies.com
61. tiwstore.com
62. upoox.com
63. vobbov.com
64. www-pursevalley.com
65. yodue.com